UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS RIVERA,

    Plaintiff,

v.                              CASE NO. 8:08-CV-01970-T-EAJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under the Act.[1]

The undersigned, after reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case, as well as the relevant statutory and case law, affirms the decision of the Commissioner denying Plaintiff's claim.

In an action for judicial review, the reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 12).

reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[2]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. BACKGROUND

Plaintiff filed an application for DIB on February 28, 2003, claiming an onset of disability beginning January 31, 2003, due to the effects of atrial fibrillation, degenerative disc disease of the lumbar spine, arthritis, pain, and stress. Plaintiff's application was denied initially and again on reconsideration. After a hearing, the ALJ denied Plaintiff's application. On March 5, 2007, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings. A remand hearing was held on August 15, 2007. Plaintiff, fifty-five years old at the time of the administrative hearing, has a college education (T 530). Plaintiff has previously been employed in the commercial tire sales industry as a sales representative and store manager (T 531-32).

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

In a September 7, 2007 decision, the ALJ held that Plaintiff was not disabled within the meaning of the Act (T 16). The ALJ found that Plaintiff's severe impediments included degenerative disc disease of the lumbar spine, lumbar right radiculopathy, right foot drop, status post back surgery times three, knee pain with status post arthroscopy, status post cholecystectomy, and hyperlipidemia (T 17-18). However, the ALJ concluded that these impairments, or combinations of impairments, did not meet or medically equal an impairment listed in the Listing of Impairments found in Appendix 1, Subpart P of Regulations No. 4 (Id.). The ALJ held that Plaintiff is capable of performing a full range of light work, including his past relevant work as a sales representative and store manager (T 27). Accordingly, the ALJ found that Plaintiff was not disabled between the application date and the date of the decision and denied Plaintiff's claim for DIB (Id.).

On August 15, 2008, the Appeals Council considered additional evidence submitted by Plaintiff and denied Plaintiff's request for review of the ALJ's decision (T 6-9).

Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits (Dkt. 14). Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II. DISCUSSION

Plaintiff argues that (1) the ALJ failed to properly consider the opinion of Plaintiff's treating physician, (2) the ALJ and the Appeals Council failed to consider relevant evidence from Plaintiff's treating physician, and (3) the ALJ failed to articulate adequate reasons for discrediting Plaintiff's testimony.

3

A.      **The Weight of the Treating Physician's Opinion**

Plaintiff asserts that the ALJ improperly discredited the opinion of Plaintiff's treating physician, Dr. Jesse Flores, M.D. ("Dr. Flores") in assessing Plaintiff's residual functional capacity ("RFC"). Plaintiff also contends the ALJ erroneously gave more weight to non-examining physicians, whose opinions predated Plaintiff's 2005 back surgeries.

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefore. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted). Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). "Good cause" exists when (1) the treating physician's opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). The opinion of a non-examining, reviewing physician without more does not constitute substantial evidence, and are entitled to little weight when contrary to those of the examining physicians. Sharfarz, 825 F.2d at 280 (citation omitted).

Plaintiff's Treatment by Dr. Flores

Dr. Flores, in a letter dated September 11, 2002, wrote "[Plaintiff] is unable to perform his duties with his current job which requires heavy lifting of tires over 120 pounds on a regular basis" (T 185). Responding to a Multiple Impairments Questionnaire dated February 2, 2004, Dr. Flores opined that, in an eight hour day, Plaintiff was limited to sitting for one hour, to standing/walking two hours, to lifting five pounds frequently and twenty pounds occasionally, and to carrying five

4

pounds frequently and twenty pounds occasionally (T 210-11). In a subsequent Multiple Impairments Questionnaire dated March 23, 2005, Dr. Flores concluded that, in an eight hour work day, Plaintiff was limited to sitting for less than one hour, to standing/walking one hour, to lifting twenty pounds occasionally, and to carrying five pounds frequently, ten pounds occasionally, and never carrying more than twenty pounds (T 349-50). In a letter dated March 26, 2005, Dr. Flores noted Plaintiff's cardiac problems and history of degenerative osteoarthritis (T 355). Dr. Flores stated that Plaintiff "is certainly limited in his daily activities with chronic back and lower extremity pain and is unable to do any lifting, pulling, and bending on his current job" (Id.). In addition, Dr. Flores opined that Plaintiff would require continued medication, physical therapy, and rehabilitation following his March 30, 2005 back surgery (Id.). Dr. Flores concluded that Plaintiff "cannot continue to function at his current job since he is unable to do any heavy lifting, pulling, and bending for any length of time" (Id.).

On April 25, 2005, Plaintiff visited Dr. Flores after his March 30, 2005 back surgery (T 427). After the surgery, Plaintiff returned to work but later experienced back pain (Id.). Dr. Flores referred Plaintiff to an orthopedic surgeon (T 428).

During examinations by Dr. Flores on August 2, 2005 and November 2, 2005, Plaintiff denied any chest pain, shortness of breath, or any heart palpitations (T 417, 423). Dr. Flores noted that Plaintiff had a history of heart disease and cardiac dysrhythmia but his condition was controlled with medication and diet (T 423). In reference to Plaintiff's back pain, Dr. Flores stated that Plaintiff had moderate kyphosis, good range of motion of the lumbosacral spine, lower back pain on straight leg raising, and some upper back tenderness (T 417, 423). Dr. Flores recommended that Plaintiff decrease his weight, stay on his cardiac diet, and exercise (T 418).

On January 5, 2006, Dr. Flores indicated that Plaintiff was admitted to the hospital for chest discomfort on November 26, 2005 but that the cardiac evaluation, including a stress test, were normal (T 411). Upon examination, Plaintiff denied any chest pain, shortness of breath, or any heart palpitations; Plaintiff's heart rate and rhythm were regular (Id.). Dr. Flores concluded that Plaintiff had mild kyphosis in his back, with limited range of motion of the lumbosacral spine (Id.).

In February 2006, Plaintiff visited Dr. Flores for treatment of a right thigh pain secondary to muscle strain (T 408). Plaintiff advised Dr. Flores that he had no chest pain, no shortness of breath, or any heart palpitations and Plaintiff's heart rhythm was regular (Id.). Dr. Flores diagnosed Plaintiff with mild kyphosis of the back and some tenderness in the right posterior thigh (Id.). Plaintiff was instructed to continue on his cardiac diet and decrease his weight with an exercise program (T 409).

Treatment of Plaintiff's Heart Condition

Dr. Lang Lin, M.D. ("Dr. Lin"), a cardiac specialist, evaluated Plaintiff's heart condition over several years. Plaintiff first visited Dr. Lin on February 12, 2003, due to complaints of significant palpitations and left chest wall discomfort (T 159). Dr. Lin concluded that Plaintiff was "well-developed, well-nourished, ... [and] is in no acute distress" and "[h]e continues to be very active, with no limitation" (Id.). After completion of an echoardiography, Dr. Lin concluded that Plaintiff's mitral valve, aortic valve, and tricuspid valve appeared normal (T 162). During a follow-up visit in September 2003, Dr. Lin observed that Plaintiff was "doing well from a cardiac standpoint." (T 183). In January 2004, Dr. Lin performed a preoperative cardiac risk assessment on Plaintiff (T 239). Dr. Lin stated that Plaintiff "is currently doing well with no significant problems from a cardiac standpoint" and "continues to be active physically" (Id.)

6

On December 6, 2006, Plaintiff was treated by Dr. Raquel Martin ("Dr. Martin"), a cardiologist (T 476). During Dr. Martin's examination, Plaintiff denied any symptoms of chest pains or shortness of breath (Id.). Likewise, Dr. Martin determined that Plaintiff had no palpitations, no lightheadedness, and no lower extremity edema (Id.). Dr. Martin concluded that Plaintiff had an abnormal electrocardiogram but was in no acute distress and recommended an exercise stress test (T 476-77). The results of the December 18, 2006 stress test indicated that Plaintiff maintained ninety-percent of his maximum predicted heart rate after exercising for twelve minutes (T 475). Following the stress test, Plaintiff experienced no symptoms, no acute changes, and no evidence of ischemia (Id.). Dr. Martin also performed a myocardial perfusion study which showed "no evidence of ischemia or previous infarct" and revealed "normal brightening and thickening of all segments with normal left ventricular function" (T 474).

<u>Treatment of Plaintiff's Knees</u>

Dr. Gordon Zuerndorfer, M.D. ("Dr. Zuerndorfer"), an orthopedic specialist, performed surgery on Plaintiff's left knee in May 2001 (T 456-58). In March 2004, Dr. Zuerndorfer concluded that while Plaintiff's left knee showed signs of mild synovitis and mild anteromedial jointline tenderness, Plaintiff's complaints of knee pain were degenerative arthritic in nature (T 450-51).

On May 10, 2006, Dr. Zuerndorfer examined Plaintiff for complaints of right knee pain after Plaintiff injured himself while playing golf (T 446). According to Dr. Zuerndorfer's notes, Plaintiff was not working but enjoyed playing golf and biking (Id.). During a follow-up visit on May 24, 2006, Plaintiff advised Dr. Zuerndorfer that "by rest alone," he was feeling better (T 442). Dr. Zuerndorfer concluded that Plaintiff's right knee had a full range of motion, good stability, and no significant swelling or stiffness (Id.). Additionally, Dr. Zuerndorfer concluded that Plaintiff could

7

stand and ambulate easily (Id.). Dr. Zuerndorfer encouraged Plaintiff to return to playing golf and other sports that interested him (Id.).

Plaintiff's Back Surgeries

In 1994, Plaintiff had L4-L5 disc surgery (T 322). On March 30, 2005, Dr. Andrew Messerm M.D. ("Dr. Messer") performed a L3-4 and L4-5 laminectomy on Plaintiff (T 340). After the operation, Plaintiff reported that he was doing well and returned to work (T 427). In April 2005, Plaintiff complained of lower back pain and difficulty standing and walking (Id.). In May 2005, Dr. Messer performed additional surgery on Plaintiff's back due to an MRI suggesting an abscess in Plaintiff's spine (T 317).

Consulting Physicians

In July 2003, Dr. Harry D. Wassal, M.D., P.A. ("Dr. Wassal") completed an orthopaedic examination of Plaintiff as requested by the Commissioner. Dr. Wassal concluded that Plaintiff had no abnormal posture or alignment of the cervical spine, some decrease in flexion of the left knee, and a normal stride, heelstrike, stance phase and pushoff (T 167-68). Also in July 2003, Dr. James J. Green, M.D. ("Dr. Green") completed a RFC assessment and opined that Plaintiff could perform light work with some postural limitations (T 172-79). Dr. Green noted that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday (T 173). Finally, in September 2003, Dr. Ronald S. Kline, M.D. ("Dr. Kline") evaluated Plaintiff and determined that Plaintiff could perform light work (T 187-91). In reference to Plaintiff's exertional limitations, Dr. Kline found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and climb, stoop,

8

kneel, crouch, and crawl with no postural limitations (T 187-88).

### Hearing Testimony of Medical Expert

At the August 15, 2007 hearing, Dr. Owen Linder, M.D., ("Dr. Linder") was called to testify as an independent medical expert. Dr. Linder indicated that Plaintiff had arterial fibrillation, post laminectomy syndrome, and a knee with abnormalities, among other conditions (T 548-49). Dr. Linder testified that "[n]one of the impairments meets the level of severity of a Listing" (T 549). Dr. Linder noted that Plaintiff's heart condition was controlled by medication and Plaintiff's main health problem was his back pain (T 553). Based on a review of Plaintiff's records, Dr. Linder concluded that Plaintiff could do light work with postural limitations (T 550).

Upon review of the record, the court finds that the ALJ properly discounted Dr. Flores' opinion that Plaintiff's impairments prevented him from performing his past relevant work. First, Plaintiff's medical records following his back surgeries in 2005 do not support Dr. Flores' RFC assessment. In 2005 and 2006, Dr. Flores indicated that Plaintiff had mild back pain and good or limited range of motion of the lumbosacral spine. Dr. Flores also concluded that Plaintiff's cardiac condition was controlled by medication and diet. In fact, Dr. Flores recommended that Plaintiff decrease his weight with an exercise program. Similarly, Plaintiff's cardiologists and orthopedists did not place any physical or environmental restrictions on Plaintiff. Second, Dr. Flores determinated in March 2005 that Plaintiff would be unable to work, especially in light of Plaintiff's March 30, 2005 back surgery. However, in April 2005, Plaintiff returned to work. Third, Plaintiff was physically active, playing golf and biking, after his back surgeries. Indeed, Plaintiff sustained an injury while playing golf in 2006.

The ALJ properly considered the RFC assessments completed in 2003 by the state consulting

9

physicians because those determinations are consistent with Plaintiff's medical records after his 2005 back surgeries, including Dr. Linder's RFC assessment in 2007. Similarly, to the extent that the ALJ relied on Dr. Lin's opinion regarding Plaintiff's cardiac condition in 2003 and 2004, Dr. Martin's medical records are consistent with Dr. Lin's findings. Dr. Flores also concluded that Plaintiff's heart condition was controlled by medication and diet.

Finally, Plaintiff argues the ALJ's reliance on Dr. Linder's RFC assessment is erroneous because Dr. Linder's testimony does not take into account Plaintiff's entire medical record. However, Dr. Linder testified that he reviewed all of Plaintiff's medical records in reaching his determination (T 548). Specifically, Dr. Linder stated that he considered Dr. Flores' March 2005 assessment and Plaintiff's back surgeries in 2005 (T 557-58). Dr. Linder concluded that there were no objective physical findings in Plaintiff's medical records to support Dr. Flores' opinion (Id.). Moreover, there is no indication in the record that the ALJ believed Plaintiff's capacity was "unlimited." Rather, the ALJ accepted Dr. Linder's opinion that Plaintiff's medical problems limited him to "light work" activity. Therefore, the ALJ did not commit error by relying on the testimony of Dr. Linder.

### B. Dr. Donald Goldman's Opinion

Plaintiff also contends that the ALJ ignored the report of Dr. Donald Goldman, M.D., ("Dr. Goldman") in his decision. Moreover, Plaintiff asserts that the Appeals Council committed error by upholding the ALJ's decision in light of Dr. Goldman's report.

On July 23, 2007, Dr. Goldman examined Plaintiff as part of a surgical consultation (T 495-503). Dr. Goldman diagnosed Plaintiff with failed back surgical syndrome and stated that Plaintiff suffered from severe lower back pain (T 496-97). According to Dr. Goldman, Plaintiff could sit for

10

one to two hours and stand/walk for one to two hours in an eight hour work day, and occasionally lift and carry five pounds of weight (T 498-99). Dr. Goldman concluded that Plaintiff was "permanently disabled from any type of employment" (T 495).

Plaintiff alleges that he submitted Dr. Goldman's report, along with a Multiple Impairments Questionnaire, to the Commissioner's office on August 13, 2007. At the August 15, 2007 hearing, Plaintiff's counsel confirmed that the 26 exhibits in F-Section and the six exhibits in E-Section constituted the complete record before the ALJ (T 547). Dr. Goldman's report was marked as Exhibit No. AC-2 and thus was not part of the record before the ALJ (T 5). As such, the ALJ did not ignore Dr. Goldman's report in determining that Plaintiff was not disabled.

The Appeals Council, however, did consider Dr. Goldman's report in denying Plaintiff's request for review of the ALJ's decision (T 6-9) and Plaintiff challenges the Appeals Council's decision (Dkt.1 at ¶ 12). The Appeals Council must review a case if the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence. See 20 C.F.R. § 404.970(b). In deciding whether to review an ALJ's decision, the Appeals Council must consider new evidence the claimant submits if that evidence is material and relevant to the time period before the ALJ's decision. Id. Under sentence four of section 405(g), a district court may review whether the Appeals Council properly denied review. Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007). In doing so, the court considers whether the administrative record as a whole, including new evidence presented to the Appeals Council, contains substantial evidence to support the Commissioner's decision to deny benefits. Id. at 1262.

Here, the Appeals Council did not err in denying further review after considering Dr. Goldman's report. The findings of Dr. Goldman, a one-time examiner, are not entitled to the

deference given Plaintiff's treating physicians. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citation omitted). Moreover, Dr. Goldman's opinion that Plaintiff was permanently disabled from any type of employment is inconsistent with the objective medical evidence in the record. Therefore, Plaintiff's claim is without merit.

### C. Credibility of Plaintiff's Testimony Concerning Pain

Plaintiff claims that the ALJ failed to articulate adequate reasons for discounting Plaintiff's complaints of pain. First, Plaintiff argues that the ALJ mischaracterized the evidence regarding Plaintiff's knee pain. Second, Plaintiff asserts that the ALJ improperly discounted Plaintiff's testimony regarding his back pain. Finally, Plaintiff argues that the ALJ misinterpreted Plaintiff's treating physicians' characterization of Plaintiff as "physically active."

The Eleventh Circuit applies a three-part "pain standard" when evaluating subjective complaints of pain. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam). Under this standard, a plaintiff must produce (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the pain resulting from the medical condition, or (3) evidence that the condition is so severe that it can reasonably be expected to cause the alleged pain. Id. (citation omitted). If the ALJ finds that the testimony of the claimant is not credible, the ALJ must articulate explicit and adequate reasons for finding a lack of credibility Id. at 1561-62. An ALJ's clearly articulated credibility finding with substantial supporting evidence will not be disturbed by a reviewing court. Id. at 1562 (citation omitted).

In reference to Plaintiff's knee pain, the ALJ concluded that the evidence established that Plaintiff had degenerative joint disease with status post left knee arthroscopy (T 25). The ALJ noted that Plaintiff had arthroscopic surgery on his left knee and that there were no reported abnormalities

12

on examination of his knee (Id.). Plaintiff argues that there were abnormalities with his knees and therefore, the ALJ incorrectly discounted his complaints of pain.

In March 2004, Dr. Zuerndorfer observed that Plaintiff's left knee showed signs of mild synovitis, mild anteromedial jointline tenderness, patellofemoral compression, and crepitus (T 451). Dr. Zuerndorfer noted that Plaintiff was "able to stand and ambulate well including squatting easily" (T 450). Upon review of Plaintiff's MRI, Dr. Zuerndorfer wrote that Plaintiff's knee showed some abnormalities in the medial meniscus, which he interpreted as an indication of degenerative arthritis (T 451). Dr. Zuerndorfer prescribed to Plaintiff Vioxx (Id.). Additionally, Dr. Zuerndorfer instructed Plaintiff to call him if he failed to improve within a week and to return in three weeks for a follow-up examine (Id.). There is no evidence that Plaintiff's left knee condition worsened at the follow-up exam (T 449).

On May 10, 2006, Dr. Zuerndorfer examined Plaintiff's right knee after Plaintiff twisted it on the golf course (T 446). Dr. Zuerndorfer reported that Plaintiff's right knee showed normal anatomy with only soft tissue swelling, moderate synovitis, mild joint line tenderness, and excellent stability (Id.). Dr. Zuerndorfer prescibed Voltaren and recommended a MRI of Plaintiff's knee (Id.). During a followup visit on May 24, 2006, Plaintiff advised Dr. Zuerndorfer that his knee was feeling much better "by rest alone" and he was not taking the prescribed medication (T 442). Dr. Zuerndorfer noted that Plaintiff's knee had very mild synovitis, no significant joint line tenderness, and "no significant swelling, stiffness, or giving way" (Id.) Indeed, Plaintiff had a full range of motion, good stability with a minor exception, and was able to stand and ambulate easily (Id.). Dr. Zuerndorfer encouraged Plaintiff to gradually increase his activities, including golf and other sports (Id.)

13

Dr. Zuerndorfer's records do not support Plaintiff's subjective complaints of knee pain. At most, Dr. Zuerndorfer's reference to the term "abnormalities" in March 2004 merely indicates that Plaintiff had degenerative arthritis in his left knee. Despite having degenerative arthritis in Plaintiff's left knee, Plaintiff was able to stand, walk, and squat easily. The injury to Plaintiff's right knee was resolved by rest alone and Plaintiff was encouraged to play golf and other sports. Thus, the ALJ properly discounted Plaintiff's complaints of knee pain.

Next, Plaintiff argues that the ALJ failed to credit Plaintiff's testimony concerning his back pain. At the hearing, Plaintiff testified that he had a laminectomy in 1994 and suffered from constant back pain since 2003 (T 535). Plaintiff testified that, starting in March 2005, his back pain was so severe that he spent most of the day lying on the floor with his legs propped up on a chair (T 561). In March and May 2005, Plaintiff testified that he had surgeries due to the worsening pain but these procedures did not resolve his back pain (T 562-63). He stated that prescription medications did not alleviate the pain and he was limited to "a bit of movement" (T 564). After his surgery in May 2005, Plaintiff testified that his back pain prevented him from sitting for more than 30 minutes at a time, and on a "bad day" he could only walk around the block and would have to return home to lie down for a couple of hours (Id.). According to Plaintiff, after his recent surgery, he has three to four "bad days" a week; he spends his days sitting down or lying down for a couple of hours resting his back (T 564-65). Plaintiff also testified that he helps his wife with household chores, including cleaning and some cooking (T 537).

After considering the testimony at the hearing and the record, the ALJ concluded that although Plaintiff endured three surgeries to his back, "physical examinations that are available reflect an absence of any finding of muscle atrophy or wasting" (T 25). The ALJ noted that Plaintiff

enjoyed an active lifestyle and returned to work after back surgery in March 2005 (Id.).

Plaintiff contends the ALJ improperly assumed that evidence of muscle spasms and muscle wasting is required to establish Plaintiff's claim of a herniated disk. While spasms and muscle atrophy may be symptoms of a herniated disk, the ALJ was not referring to these symptoms as necessary proof of a herniated disk. Rather, the ALJ found that while Plaintiff had undergone three surgical procedures on his back, an absence of reported findings of muscle spasm, muscle atrophy, or intractable pain refuted Plaintiff's subjective statements of back pain (T 25). Further, the ALJ discounted Plaintiff's complaints of back pain based on examinations by Plaintiff's treating physicians, Drs. Zuerndorfer and Lin, as well as Plaintiff's physical activity, including playing golf and bike riding.

Plaintiff argues that the ALJ misconstrued Plaintiff's treating physicians' characterization of Plaintiff as being "physically active" and "very active with no limitation." Plaintiff claims Dr. Zuerndofer's description of Plaintiff as "physically active" is limited to his knee condition.[3] Likewise, Plaintiff argues that Dr. Lin's notations of Plaintiff's physical activity do not address Plaintiff's overall functional capacity but only his cardiac condition.

In March 2004, after examining Plaintiff for knee pain, Dr. Zuerndorfer stated that the Plaintiff "is able to stand and ambulate well including squatting," and Plaintiff could resume his daily activities with only slight modifications (T 450-51). In May 2006, Dr. Zuerndorfer again examined Plaintiff after Plaintiff had injured himself on the golf course (T 446). Dr. Zuerndorfer noted that Plaintiff stated he enjoyed golf and biking (Id.). After Plaintiff had an MRI of his right

---

[3] Dr. Zuerndorfer never expressly stated that Plaintiff was "physically active." Instead, Dr. Zuerndorfer referenced Plaintiff's participation in sports, such as golf and biking (See T 442, 446).

knee, Dr. Zuerndorfer encouraged Plaintiff "to gradually increase activities," including golf and other sports that Plaintiff enjoyed (T 442). In 2003, Dr. Lin noted that Plaintiff was "very active, with no limitation" (T 159).

There is no indication in the record that Drs. Zuerndorfer's or Lin's descriptions of Plaintiff's physical activity were limited to Plaintiff's knee or cardiac condition. Even assuming these comments were limited, other evidence supports a finding that Plaintiff was an active person. At a 2006 treadmill stress test, Plaintiff exercised for twelve minutes during which he achieved ninety percent of his maximum predicted heart rate (T 475). After undergoing back surgery in late March 2005, Plaintiff returned to work (T 427). After his back surgery in May 2005, he enjoyed golf and biking (T 446) and performed daily household chores (T 537). Therefore, Plaintiff's argument is without merit.

In conclusion, the ALJ articulated several reasons for discrediting Plaintiff's statements with regard to pain and the ALJ properly discounted Plaintiff's complaint of pain.

### III. CONCLUSION

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED** that:

(1) the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2) the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida on this 9th day of February, 2010.

*Elizabeth S. Jenkins* (signature)

ELIZABETH A JENKINS
United States Magistrate Judge